IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPENCER L. LINDSAY,

    Plaintiff,

  v.       CASE NO. 10-3175-SAC

KANSAS DEPT. of
CORRECTIONS,
et al.,

    Defendants.

## MEMORANDUM AND ORDER

This civil rights complaint, 42 U.S.C. § 1983, was filed pro se by an inmate of the Winfield Correctional Facility, Winfield, Kansas (WCF). Having considered all materials in the file, the court finds as follows.

## FILING FEE

The statutory fee for filing a civil rights complaint is $350.00. Plaintiff has filed a motion to proceed without prepayment of fees (Doc. 2) and has submitted the requisite affidavit and financial records in support. Under the Prison Litigation Reform Act, a prisoner litigant is required to pay the full filing fee in a civil action. Where insufficient funds exist for upfront payment of the full filing fee, the court is directed to collect an initial partial filing fee in the amount of 20 percent of the greater of the average monthly deposits to the inmate's account or the average monthly balance for the preceding six months. 28 U.S.C. § 1915(b)(1)(A) and (B). However, where an inmate has no means by which to pay an initial partial filing fee, the prisoner shall not

be prohibited from bringing a civil action. 28 U.S.C. § 1915(b)(4). Having considered the plaintiff's financial records, the court finds no initial partial filing fee may be imposed at this time due to plaintiff's limited resources, and grants plaintiff leave to proceed without prepayment of fees.

Plaintiff is reminded that he remains obligated to pay the $350.00 district court filing fee in this civil action through payments collected from his inmate trust fund account when funds become available, as authorized by 28 U.S.C. § 1915(b)(2).[1]

**MOTION TO AMEND**

Plaintiff filed an original Complaint. Within two weeks he filed a "Supplement to Complaint" which purported to add three new parties and an exhibit, and was thus docketed as his First Amended Complaint (Doc. 3). Plaintiff's first Amended Complaint was as a matter of right. Within another two weeks, plaintiff filed a Motion for Leave to file an Amended Complaint (Doc. 5). He was correct to seek leave to file a Second Amended Complaint. The court grants this motion, and directs the clerk to file the amended complaint attached to plaintiff's motion as plaintiff's "Second Amended Complaint." The original Complaint (Doc. 1) and the First Amended Complaint (Doc. 3) are completely superceded by the Second Amended

---

[1] Being granted leave to proceed in forma pauperis entitles plaintiff to pay the filing fee over time through payments automatically deducted from his inmate trust fund account. Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is confined is directed by copy of this Order to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full. Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

Complaint, and shall not be considered further by the court.

**FACTUAL BACKGROUND**

The following facts are found from plaintiff's allegations and exhibits, and accepted as true. The Social Security Administration (SSA) sent Mr. Lindsay two U.S. Treasury checks at WCF. The funds were not deposited in Mr. Lindsay's inmate account. Plaintiff's exhibits indicate that KDOC employees in the Centralized Inmate Banking Unit (CIB) intercepted, withheld, and copied both checks and mailed the copies to Elaine Pettiford at the "Social Security Office" with the following inquiry:

> Your assistance is requested in verifying the validity of the listed check(s). This information is submitted in support of your program to detect fraudulently filed returns. . . . The check(s) are due for deposit to the individual(s) concerned but will be temporarily held in suspense pending receipt of your prompt instructions regarding proper disposition.

Plaintiff also exhibits a copy of a fax from E. Pettiford on behalf of the SSA dated June 4, 2010, with regard to the first check that provided: "Spencer L. Lindsay is <u>not</u> entitled to this check. Please return." In response regarding the second check, on July 8, 2010, E. Pettiford wrote on and returned KDOC's correspondence with the message: "Spencer Lindsay is not due the check. Please return. Thanks." On June 10, 2010, Mr. Lindsey received "a faxed photocopy" of the United States Treasury check in the amount of $616.50 that had been mailed to him at the WCF by the SSA; and on July 12, 2010, of the other in the amount of $727.00. The copies were sent to plaintiff by Mr. David Ferris from the CIB and were accompanied by copies of the correspondence between defendant Ferris and Pettiford.

3

Plaintiff filed a grievance on this matter, and attached an exhibit to his original complaint that is the Warden's Response dated July 19, 2010. This Response indicated that Internal Management Policy and Procedure (IMPP) 4-103 pertinently provided:

> All government checks . . . shall be held in escrow by the appropriate banking staff until such time as the issuing agency verifies that the payment is legitimate and due the inmate. Should the issuing agency request that a check . . . be returned, the appropriate facility staff shall notify the inmate of the details surrounding the return of the check.

Id. The Response further indicated that the checks sent by official mail were not opened in the WCF mailroom, but were "intercepted at the Inmate Centralized Banking level." It also provided that "David Ferris, from the Centralized Inmate Banking Unit, submitted a copy of the information to Mr. Lindsay advising him of the decision made by the (SSA) in regard to the returned checks."

Plaintiff informed prison officials in a grievance that he had not worked "since 2006 injury," and had "recently been granted a favorable decision from Social Security Adjudication hearings office in Wichita for SSD and SSDI payments, with allotted back pay." He also stated that his attorney had informed him that he could "collect back due with SSD despite incarceration, but not with SSI." The prison administrative response to this grievance included that "the information you have provided reflects your issue is with the Social Security office, not KDOC." Plaintiff was also informed that proper policy and procedure were followed by the CIB, and he was "encouraged to communicate with the SSA" if he disagreed with their decision.

**CLAIMS AND REQUESTED RELIEF**

Plaintiff complains that he was not given prior notice of either the arrival or the seizure of the checks made out to and mailed to him, and was only provided notice after his property was "forfeited." He asserts that his federal constitutional rights were violated in that he was deprived him of property without due process, he was denied equal protection of the law, and he was subjected to unreasonable searches and seizures. He seeks injunctive relief and money damages.

**DEFENDANTS MUST BE PROPERLY DESIGNATED**

Unfortunately, plaintiff's Second Amended Complaint appears to be incomplete, probably due to his failure to submit it upon court-provided forms. The court cannot simply continue to consider some portions and not others of the original and First Amended Complaints, which have been completely superceded, as part of the Second Amended Complaint, based upon the court's speculation that plaintiff probably meant, but failed, to include parts in his Second Amended Complaint.

The only defendant named in the caption of the Second Amended Complaint is Kansas Department of Corrections (KDOC), and no section is included providing address and other information for defendant(s).[2] Plaintiff's references to persons as defendants in the body of the Second Amended Complaint or in any superceded

---

[2] Plaintiff's original Complaint, which the court reiterates was entirely superceded, named the following defendants: KDOC, WCF, Secretary of Corrections Roger Werholtz, Emmalee Conover, David Ferris, Sharon Lunkwicz, and Lynn Crain. Plaintiff's First Amended Complaint (titled Supplement) attempted to add "John Doe" employee of KDOC or WCF Centralized Banking; Elizabeth Rice, Office of the Kansas Secretary of Corrections; and USPS or "John Doe" USPS Postal Carrier Employee, but the only defendant named in the caption was KDOC, and the First Amended Complaint has also been entirely superceded.

5

complaint are not sufficient to designate those persons as defendants. Instead, all defendants must be named in the caption of the operative complaint. See Fed.R.Civ.P. Rule 10(a)(The title of the complaint must name all the parties.). At this time, the court considers KDOC as the only properly named defendant because the Second Amended Complaint is the operative complaint.

If plaintiff intends to name other defendants, he must file a "Third Amended Complaint" in response to this Order. The Third Amended Complaint must be upon court-provided forms, and the caption must contain the name of every defendant plaintiff intends to sue in this action. It must also include pertinent information as to each and every defendant in paragraph (2) of the first page on the form.

**SCREENING**

Additional reasons exist for plaintiff to file a Third Amended Complaint. Because Mr. Lindsay is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the Second Amended Complaint is subject to being dismissed. Plaintiff must cure the deficiencies set forth herein, and should do so by filing a Third Amended Complaint.

**FAILURE TO NAME A PROPER DEFENDANT**

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

6

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992).

The KDOC is not a "person" amenable to suit under § 1983.[3] Rather, the KDOC is an agency of the State, and as such, has absolute immunity to a suit for money damages. Thus, the only defendant named in the Amended Complaint, KDOC, is not a proper defendant. Unless plaintiff shows cause why KDOC should not be dismissed based upon its absolute immunity, the court will dismiss KDOC from this lawsuit. Furthermore, unless plaintiff has filed a Third Amended Complaint naming a proper defendant, this entire action will have to be dismissed for failure to designate any proper defendant.

Federal employees and agents act under color of federal law, not state law. Thus, employees of the USPS and the SSA may not be sued in a § 1983 complaint. Federal employees generally may be sued for negligence under the Federal Tort Claims Act.

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477

---

[3] Likewise, the WCF is a prison facility and the USPS is a federal agency. Neither is a "person" amenable to suit for money damages under § 1983.

(10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008). To be held liable under § 1983, a supervisor must have personally participated or acquiesced in the complained-of constitutional deprivation. Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988).

Plaintiff does not allege facts showing that all individual persons he has attempted to name as defendants were personally involved in the acts of withholding, seeking verification on, and returning these two checks.[4] In fact, he acknowledges that some defendants "did not commit the constitutional violations" but argues they became liable for the acts of others when they failed to correct those violations "in the course of their supervisory responsibilities." Mr. Lindsay is simply not correct that a prison employee or KDOC official may be held liable for acts he or she did not commit, simply by virtue of his or her supervisory capacity over the persons that committed those acts. Even where the supervisory official upheld acts previously taken by another person and denied relief in administrative proceedings, he or she is not a proper defendant in a civil rights complaint unless the supervisor also personally participated in the allegedly unconstitutional acts.

---

[4] Plaintiff has not alleged sufficient facts showing that the following persons were involved in either the withholding or the return to the agency of his two checks: Roger Werholtz, Emmalee Conover, Sharon Lunkwicz, Lynn Crain, Elizabeth Rice, John Doe United States Postal Carrier, and John Doe Inmate Centralized Banking Employee.

Plaintiff must file a Third Amended Complaint in which he names as defendants only those persons who actually participated in the acts of withholding and returning his two checks, or who applied IMPP 04-103 to his checks, if he claims that IMPP 04-103 is unconstitutional. If plaintiff includes defendants in his Third Amended Complaint without alleging facts showing their personal participation in the handling of the two checks in question, those defendants will be dismissed from this action. In sum, Mr. Lindsay must determine which individual persons actually participated in the acts that he believes violated his federal constitutional rights, describe the direct personal acts of each defendant, and sue only those persons in the appropriate type of action.

**FAILURE TO STATE A FEDERAL CONSTITUTIONAL CLAIM**

Mr. Lindsay's main claim is that he was deprived of property without due process of law. The court finds that the facts presented by plaintiff, accepted as true, evince no federal constitutional violation. Plaintiff alleges that the act of opening of his mail from the SSA was illegal; however, he does not expressly assert a violation of the First Amendment. Nor does he allege facts showing such a violation. The First Amendment protects a prisoner's right to receive mail, but that right does not prohibit prison officials from inspecting mail for security purposes. "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995)(citation and quotation omitted). The Supreme Court has long recognized that an inmate's right to receive mail and

other packages may be limited by prison regulations that are reasonably related to legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 416 (1989)(holding that prison authorities have broad discretion in regulating the entry of material into a prison); Turner v. Safley, 482 U.S. 78, 91-92 (1987)(upholding prison restrictions on mail as reasonably related to legitimate security concerns); Bell v. Wolfish, 441 U.S. 520, 550 (1979)(upholding ban on inmate receipt of certain hardback books and packages containing personal property and food in order to counter risk of smuggled contraband). Likewise, prison officials may legitimately open envelopes to inmates containing monetary funds in order to determine whether or not the inmate should be allowed to receive those funds in prison. Since the transfer of funds to inmates can be regulated, a prison official's actions in opening mail containing government checks, removing and copying the checks, and sending the copies to the government agency for verification in accord with prison regulations are not shown to have been unreasonable or to have constituted an unconstitutional search and seizure.

This case does not involve random or unauthorized actions by prison officials. Instead, Mr. Lindsay alleges and exhibits that the acts of withholding and returning his checks were pursuant to a particular, established KDOC policy. In Sandin, the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. The

Tenth Circuit subsequently ruled that property interest claims by inmates are to be reviewed under Sandin's analysis. <u>Cosco v. Uphoff</u>, 195 F.3d 1221, 1224 (10th Cir. 1999); <u>see</u> <u>Steffey v. Orman</u>, 461 F.3d 1218, 1221 (10th Cir. 2006)(Inmate had no property right protected by the Fourteenth Amendment to receive a contraband money order while in prison because "prison officials . . . have a legitimate interest in controlling both the amount and source of funds received.").

Mr. Lindsay has presented no evidence or authority indicating that the deprivation here was an "atypical and significant hardship" that subjected him to conditions different from those ordinarily experienced by inmates serving their sentences in the customary fashion. As noted above, it is well-established that prisons have broad discretion in regulating the entry of materials including money into prison. Decisions within this and other Circuits demonstrate that the seizure and forfeiture of money is a typical incident of prison life, and is not a significant property interest deprivation. <u>See</u> <u>Steffey</u>, 461 F.3d at 1222-23; <u>Cosco</u>, 195 F.3d at 1224 (holding that regulation of the type and quantity of personal property inmates may possess in their cells is a not an atypical, significant hardship of prison life); <u>Harris v. Forsyth</u>, 735 F.2d 1235, 1236 (11th Cir. 1984)(holding that prison's confiscation of contraband currency is reasonable restriction on property rights); <u>Lyon v. Farrier</u>, 730 F.2d 525, 527 (8th Cir. 1984)(ruling that inmate "cannot seriously argue" he has a protected property interest in contraband personal property found in cell); <u>Sullivan v. Ford</u>, 609 F.2d 197, 198 (5th Cir. 1980)(concluding no due process violation where prison confiscated contraband currency in cell).

Furthermore, the regulation itself is not an atypical type of restraint since it presumably is imposed upon the entire KDOC prison population. In sum, limitations on an inmate's use and receipt of money while in prison is an ordinary incident of prison life and well within the bounds of what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction. The events alleged do not show that plaintiff suffered an "atypical and significant hardship," and do not evince a denial of constitutional due process.

In any event, a "due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." Steffey, 461 F.3d at 1221-22 (citation omitted). The requirement of a "predeprivation hearing is relevant only if an inmate first demonstrates that he has a protected property interest." Id. (citing Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir. 1989)(per curiam)). In order to have a property interest in a benefit, a person must have a legitimate claim of entitlement to it. Id. at 1223. Here, Mr. Lindsay has not established that he had a property interest in the two checks protected by the Fourteenth Amendment.

Moreover, it appears that the published IMPP provided plaintiff with adequate pre-deprivation notice of the verification process applicable to government checks received at the prison. He was then provided notice in accordance with that policy that his checks were returned because the agency found he was not entitled to them. Plaintiff does not challenge IMPP 04-103 as unconstitutional. If an inmate challenges a prison regulation as impinging on the inmate's

constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. <u>Thornburgh</u>, 490 U.S. at 401; <u>Turner</u>, 482 U.S. at 89. A prison regulation does not violate a prisoner's substantive due process rights unless the prisoner proves that the regulation lacks "a rational relation to legitimate penological interests." <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003)(upholding restrictions on visitation); <u>Sperry v. Werholtz</u>, 321 Fed.Appx. 775, 778 (10th Cir. 2009). The court may presume that a prison regulation like IMPP 04-103 serves a legitimate penological interest since prison officials at KDOC institutions have a legitimate interest in controlling both the amount and source of funds received by inmates. Substantial deference is given to the professional judgment of prison administrators because they have "significant responsibility for defining the legitimate goals of [the prison] and for determining the most appropriate means to accomplish them." <u>Overton</u>, 539 U.S. at 132. Mr. Lindsay asserts no legal or evidentiary challenge to the validity of IMPP 04-103. <u>Id.</u> (holding that burden is not on the State to prove the validity of the prison regulation, but on the prisoner to disprove it). Plaintiff does contest the application of the policy to his checks. Instead, he challenges the procedure of taking of his checks without a pre-deprivation hearing.

Finally, the court finds that plaintiff's claim of a denial of equal protection is completely conclusory. "Equal protection is essentially a direction that all persons similarly situated should be treated alike." <u>Fogle v. Pierson</u>, 435 F.3d 1252, 1260 (10th Cir.), <u>cert</u>. <u>denied</u>, 549 U.S. 1059 (2006). Plaintiff fails to allege facts establishing the essential elements of this claim. <u>See</u>

Rider v. Werholtz, 548 F.Supp.2d 1188 (D.Kan. 2008)(citing Riddle v. Mondragon, 83 F.3d 1197, 1207 (10th Cir. 1996)).  He alleges no facts suggesting that he is a member of a suspect classification, that he was treated differently from other similarly-situated prisoners, or that defendants' acts did not serve a legitimate penological purpose, as is essential to state a claim under the Equal Protection Clause of the Fourteenth Amendment.  Fogle, 435 F.3d at 1261; Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998).  To the contrary, plaintiff alleges that the acts of which he complains were pursuant to a prison policy.  He does not allege that any other inmates who received government checks were not subject to this policy.

If plaintiff disagrees with the finding of the SSA that he is not entitled to the checks, then he must exhaust any administrative remedies available within the SSA before he may challenge the SSA's decisions or actions in federal court.  As noted, he cannot sue a federal agent in a § 1983 complaint, and § 1983 is not the appropriate vehicle for challenging the administrative decision of a federal agency.

**OTHER MOTIONS**

Having considered plaintiff's Motion to Appoint Counsel (Doc. 6), the court finds it should be denied.  There is no constitutional right to appointment of counsel in a civil case. Durre v. Dempsey, 869 F.2d 543, 547 (10th Cir. 1989); Carper v. Deland, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991).  The burden is on the

applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." Steffey, 461 F.3d at 1223 (citing Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir. 2004). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." Steffey, 461 F.3d at 1223 (citing Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir. 1995). In deciding whether to appoint counsel, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." Rucks, 57 F.3d at 979; Hill, 393 F.3d at 1115. Considering the above factors, the Court concludes that (1) it is not clear at this juncture that plaintiff has asserted a colorable claim; (2) the issues are not complex; and (3) plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court denies plaintiff's motion for appointed counsel at this juncture. However, this denial is without prejudice. At this stage of the litigation the primary issue before the Court is the sufficiency of plaintiff's allegations to state a federal claim. Because no special legal training is required to recount the facts surrounding an alleged injury, pro se litigants may be expected to state such facts without any legal assistance. See Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991).

Plaintiff's motion for issuance of summons is denied, without prejudice, as unnecessary. This court automatically issues summons upon the defendants if a complaint survives screening.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's Motion for Leave to Amend Complaint (Doc. 5) is granted, and the clerk is directed to file the attached amended complaint as plaintiff's "Second Amended Complaint."

**IT IS FURTHER ORDERED** that plaintiff's motion to proceed without prepayment of fees (Doc. 2) is granted, and he is hereby assessed the full filing fee herein of $350.00 to be paid through payments automatically deducted from his inmate account as funds become available.

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to cure the deficiencies in his Complaint discussed herein by filing a complete Third Amended Complaint on forms provided by the court, with all defendants named in the caption, and all claims which plaintiff intends to present included in the Third Amended Complaint, and all exhibits which plaintiff intends to have before this court referred to within the Third Amended Complaint.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Issuance of Summons (Doc. 4) and Motion for Appointment of Counsel (Doc. 6) are denied, without prejudice.

The clerk is directed to transmit a copy of this order to the finance office where plaintiff is currently confined, and to send § 1983 forms to plaintiff.

**IT IS SO ORDERED.**

Dated this 8th day of November, 2010, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge